FILED

May 26 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0520

DA 14-0520

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 142

VICTOR WORLEDGE, MATTHEW HALL,
LYNNE KELLY, and MICHAEL BARTHOLIC,
and all others similarly situated,

      Plaintiffs and Appellees,

    v.

RIVERSTONE RESIDENTIAL GROUP, LLC,
HSC REAL ESTATE, INC., CREEKSIDE ICG
APARTMENT PORTFOLIO III, LLC, NW
APARTMENT PORTFOLIO II WILDFLOWER,
LLC, NW APARTMENT PORTFOLIO II
SHILOH GLEN, LLC, and 4000 MULLAN
ROAD LLC,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV 13-658
Honorable Karen S. Townsend, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          David M. McLean, Christy S. McCann, Browning, Kaleczyc, Berry &
Hoven, P.C., Missoula, Montana
(*for Creekside ICG Apartment Portfolio III, LLC, NW Apartment
Portfolio II Wildflower, LLC, and NW Apartment Portfolio II Shiloh Glen,
LLC*)

          W. Scott Mitchell, Michael P. Manning, Holland & Hart, LLP,
Billings, Montana
(*for Riverstone Residential Group, LLC and HSC Real Estate, Inc.*)

          Perry J. Schneider, Hannah Stone, Milodragovich, Dale & Steinbrenner,
P.C., Missoula, Montana
(*for 4000 Mullan Road, LLC*)

For Appellees:

Christopher W. Froines, Froines Law Office, Inc., Missoula, Montana

Submitted on Briefs: March 25, 2015
Decided: May 26, 2015

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Appellants Riverstone Residential Group, LLC (Riverstone), HSC Real Estate, Inc. (HSC), Creekside ICG Apartment Portfolio III, LLC (Creekside), NW Apartment Portfolio II Wildflower, LLC (Wildflower), NW Apartment Portfolio II Shiloh Glen, LLC (Shiloh Glen), and 4000 Mullan Road, LLC (Mullan) appeal a Fourth Judicial District Court, Missoula County, order certifying as a class action claims against them by named Plaintiffs Victor Worledge, Ana Vlahovich, and Lynne Kelly.[1] We restate the issues on appeal as follows:

*1. Whether the District Court abused its discretion by admitting new evidence submitted with Plaintiffs' reply brief.*

*2. Whether the District Court abused its discretion in determining that the proposed class satisfied M. R. Civ. P. 23(a)'s prerequisites to class certification.*

*3. Whether the District Court abused its discretion by certifying the class under M. R. Civ. P. 23(b)(3).*

¶2 We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Appellants Creekside, Wildflower, Shiloh Glen, and Mullan (collectively, "Owners") are owners of multi-unit apartment buildings located in Montana: Creekside, Wildflower, and Mullan own apartment complexes in Missoula, and Shiloh Glen owns an apartment complex in Billings. Appellant Riverstone and its predecessor, HSC (collectively, "Riverstone"), are property management companies that collectively

---

[1] Vlahovich was dismissed, and Plaintiffs Matthew Hall and Michael Bartholic were added, in the Second Amended Complaint.

managed Owners' apartment complexes during times relevant to the complaint. Appellees are current or former tenants of Owners' apartment complexes who signed leases for those apartments through Riverstone: Worledge resides at Creekside, Kelly resides at Wildflower, and Vlahovich formerly resided at Creekside.

¶4 On June 11, 2013, Worledge, Vlahovich, and Kelly filed a complaint on behalf of themselves and other unnamed plaintiffs (collectively, "Tenants") who entered into rental agreements with Riverstone to rent apartments at Owners' apartment complexes. On October 21, Tenants filed a First Amended Complaint, Statement of Class Action, and Jury Demand. Tenants' First Amended Complaint alleged that rental agreements at all four apartment complexes were almost identical and contained provisions that violated the Montana Residential Landlord and Tenant Act (Landlord-Tenant Act), §§ 70-24-101 through 442, MCA, and the Montana Security Deposit Act (Security Deposit Act), §§ 70-25-101 through 206, MCA. To support these allegations, Tenants filed as exhibits several of the named parties' leases with Riverstone. Between November 2013 and February 2014, Riverstone and Owners filed their answers to the complaint.

¶5 On March 13, 2014, Tenants moved to certify a class action under M. R. Civ. P. 23. Tenants alleged that the following provisions included in Riverstone leases are prohibited by law: cancellation fees and liquidated damages clauses; provisions requiring the complete forfeiture of security deposits instead of qualified deductions; provisions requiring payment of non-refundable fees; provisions requiring non-refundable pet deposits; provisions exonerating Riverstone and Owners from any risk associated with

4

Tenants' loss of personal property; provisions requiring Tenants to pay all of Owners' and Riverstone's attorney's fees, regardless of fault; and provisions requiring Tenants to indemnify Riverstone and Owners for any injuries to guests.

¶6     Under the Landlord-Tenant Act,

> A rental agreement may not provide that a party: (1) agrees to waive or forego rights or remedies under [the Landlord-Tenant Act]; (2) authorizes any person to confess judgment on a claim arising out of the rental agreement; or (3) agrees to the exculpation or limitation of liability resulting from the other party's purposeful misconduct or negligence to indemnify the other party for the liability or the costs or attorney's fees connected therewith.

Section 70-24-202, MCA. Provisions prohibited under § 70-24-202 are unenforceable, and, "If a party purposefully uses a rental agreement containing provisions known by the party to be prohibited, the other party may recover, in addition to . . . actual damages, an amount up to 3 months' periodic rent." Section 70-24-403, MCA. The Security Deposit Act contains a list of deductions that a landlord may make from a tenant's security deposit and provides, "A person may not deduct or withhold from the security deposit any amount for purposes other than those set forth [in that list]." Section 75-25-201, MCA.

¶7     Tenants sought class certification under M. R. Civ. P. 23(b)(3). Rule 23(a) sets forth four threshold requirements to class certification: numerosity, commonality, typicality, and adequate representation. M. R. Civ. P. 23(a). Rule 23(b)(3) requires a court to find that "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior

5

to other available methods for fairly and efficiently adjudicating the controversy." M. R. Civ. P. 23(b)(3). Thus, Rule 23(b)(3) adds two requirements—predominance and superiority—to the prerequisites under Rule 23(a).

¶8 In their motion to certify, in addition to the named parties' Riverstone leases, Tenants filed as exhibits four letters from Riverstone to residents of each apartment complex. The letters, dated May 1 and May 3, 2013, purported to change certain provisions of the Riverstone leases to "better comply with Montana Law." The letters were written on Mullan, Shiloh Glen, Wildflower, and Creekside letterhead and were signed "Mullan Reserve Management," "Shiloh Glen Management," "Wildflower Management," and "Creekside Apartments Management," respectively. Otherwise, the letters were substantively identical.

¶9 In their responses to Tenants' motion to certify, Riverstone and Owners argued that Tenants had not submitted sufficient evidence to meet their burden of proof and thus had not met any of the Rule 23 requirements. Riverstone and Owners argued that, among other issues, Tenants did not submit evidence to support their claim that there were over 1,000 class members (numerosity); Tenants did not prove that class members had substantially similar lease agreements (commonality); the named plaintiffs could not represent tenants for apartment complexes where they had never lived (typicality and adequate representation); and the court could not resolve whether Riverstone and Owners violated the Security Deposit Act without performing an individual analysis for each class member (predominance).

6

¶10 On April 11, 2014, Tenants filed a motion to amend their first amended complaint by removing Vlahovich and adding named Plaintiffs Hall, a former resident at Mullan, and Bartholic, a former resident at Shiloh Glen. Also on April 11, Tenants filed a reply brief regarding their motion to certify, attaching four additional exhibits—Exhibits H, I, J, and K—to rebut Owners' and Riverstone's assertions that Tenants did not meet the Rule 23 requirements. Exhibit H was a spreadsheet identifying each potential class member, his or her move-in and move-out dates, the name of the apartment complex in which he or she resided, and which of the seven allegedly prohibited provisions his or her lease contained. Exhibit I was an affidavit by Susan Mayer, president and CEO of Litigation Abstract, Inc., the company that generated the spreadsheet. Exhibit J was an affidavit by attorney Klaus Sitte, testifying to the legislative intent of the committee, of which he was a member, that drafted the Landlord-Tenant Act. Exhibit K consisted of several filings in lawsuits brought by Owners against Tenants in which Owners sought to enforce allegedly prohibited attorney's fees provisions in the leases.

¶11 Riverstone and Owners opposed Tenants' motion to amend and moved to strike Tenants' Exhibits H, I, J, and K, arguing that the exhibits presented new, inadmissible evidence that Tenants could not present for the first time in a reply brief. Riverstone and Owners noted that courts are hesitant to admit such evidence because it deprives the opposing party of an opportunity to respond. On June 11, 2014, the District Court denied

the motions to strike, finding the exhibits admissible.[2]  The court reasoned that, though parties may not include new *arguments* in a reply brief, Tenants merely had submitted new *evidence* in direct rebuttal to Riverstone's and Owners' response briefs. Additionally, the court allowed Riverstone and Owners fourteen days to file sur-replies, supplemental briefing, or supporting evidence to address Tenants' new exhibits, and twenty-one days to request further hearings.  On June 25, 2014, Riverstone and Owners all filed sur-replies.  Neither Riverstone nor Owners requested hearings or additional time.

¶12     On July 30, 2014, the District Court issued a memorandum and order granting Tenants' motion for class certification.  The court defined the class as follows:

> All persons who had apartment rental agreements with Riverstone Residential Group, or its predecessor, acting as agents for apartment owners Creekside, Wildflower, Shiloh Glen, and 4000 Mullan Road apartments between June 11, 2011, to present, where the rental agreements contained illegal rental provisions in violation of the Montana Residential Landlord Tenant Act and/or the Montana Security Deposit Act.

On the same day, the court issued an order granting Tenants' motion to amend their first amended complaint.  The court determined that whether Tenants could add new named plaintiffs did not impact class certification because the court had certified the class based on Tenants' first amended complaint, which satisfied Rule 23 without naming a plaintiff that was a resident of either Mullan or Shiloh Glen.  In spite of making this

---

[2] However, the District Court explained in its certification order that it would not consider the Sitte affidavit because "Sitte is an attorney and his affidavit essentially provides his interpretation of the Landlord Tenant Act and legislative intent."  This ruling is not challenged on appeal.

determination, the court noted that adding two new plaintiffs did not prejudice Riverstone or Owners because Tenants did not assert any new legal theory, there was no dispositive motion pending, Tenants did not act in bad faith, and the amendments were submitted before the deadline set by a joint scheduling order.

¶13 Riverstone and Owners appeal the District Court's class certification.

## STANDARDS OF REVIEW

¶14 "Trial courts have the broadest discretion when deciding whether to certify a class," *Sieglock v. Burlington N. & Santa Fe Ry. Co.*, 2003 MT 355, ¶ 8, 319 Mont. 8, 81 P.3d 495, because they are in the "best position to consider the most fair and efficient procedure for conducting any given litigation," *Chipman v. Nw. Healthcare Corp.*, 2012 MT 242, ¶ 17, 366 Mont. 450, 288 P.3d 193. Accordingly, we will not upset the District Court's decision to certify a class unless we determine that the court abused its discretion. *Mattson v. Mont. Power Co.*, 2012 MT 318, ¶ 17, 368 Mont. 1, 291 P.3d 1209. A court abuses its discretion when it acts "arbitrarily without conscientious judgment or exceed[s] the bounds of reason." *Mattson*, ¶ 17. "To the extent that the ruling on a Rule 23 requirement is supported by a finding of fact, that finding . . . is reviewed under the 'clearly erroneous' standard." *Mattson*, ¶ 17 (quoting *Miles v. Merrill Lynch & Co.*, 471 F.3d 24, 40-41 (2d Cir. 2006) (internal quotation marks omitted)). Rulings on issues of law are reviewed de novo. *Mattson*, ¶ 17 (citing *Miles*, 471 F.3d at 40-41).

**DISCUSSION**

¶15 *1. Whether the District Court abused its discretion in admitting new evidence submitted with Plaintiffs' reply brief.*

¶16 Riverstone and Owners argue that the District Court abused its discretion by considering material first submitted with Tenants' reply brief. We have held many times that we "will not address the merits of an *issue* presented for the first time in a reply brief." *State v. Makarchuk*, 2009 MT 82, ¶ 19, 349 Mont. 507, 204 P.3d 1213 (quoting *Pengra v. State*, 2000 MT 291, ¶ 13, 302 Mont. 276, 14 P.3d 499) (emphasis added and internal quotation marks omitted). However, we have not addressed a case where, as here, a plaintiff presents new *evidence* in response to a defendant's challenge that the plaintiff has not met her evidentiary burden.

¶17 Courts that strike new evidence offered for the first time in a plaintiff's reply brief are typically driven by fairness to the parties, reasoning that admitting such evidence "deprives a defendant of an opportunity to meaningfully respond." *Bennett v. Sprint Nextel Corp.*, No. 09-2122-EFM, 2013 U.S. Dist. LEXIS 41161, at *6-7 (D. Kan. Mar. 25, 2013); *see also Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1273 n.3 (9th Cir. 1993) (striking new evidence presented in a reply brief after the defendant argued that "the new information was outside the record and that including it in a reply brief deprived the [defendant] of an opportunity to respond"); *In re Taco Bell Wage & Hour Actions*, No. 1:07-cv-01314-OWW-DLB, 2011 U.S. Dist. LEXIS 109169, at *19 (E.D. Cal. Sept. 26, 2011) ("New evidence or analysis presented for the first time in a reply will not be considered.") (citations omitted). Courts also have stricken new evidence offered in a

10

reply brief when it was available to the plaintiff before she submitted a motion to certify. *See Armstrong v. Genesh, Inc.*, No. 11-1161-CM, 2011 U.S. Dist. LEXIS 142722, at *2 (D. Kan. Dec. 12, 2011) (noting, "The court could consider the newly-submitted evidence and give defendant an opportunity to respond, but the court believes this measure is unnecessary"); *Lang v. Kan. City Power & Light Co.*, 199 F.R.D. 640, 651 (W.D. Mo. 2001) (granting a defendant's motion to strike expert testimony offered in a reply brief when the plaintiffs, in interrogatories and in discussions with the court, had indicated that they would not use expert testimony).

¶18    Neither of these concerns applies to the evidence at issue here: Tenants did not have access to the spreadsheet and testimony providing its foundation before submitting their motion to certify, and the District Court gave Riverstone and Owners an opportunity to file sur-replies and to request a hearing.  Riverstone and Owners argue that the District Court abused its discretion by admitting the new evidence without allowing them an opportunity to conduct discovery regarding that evidence or to obtain an expert of their own, and that fourteen days was insufficient time to file a sur-reply.   However, Riverstone and Owners filed sur-replies without ever requesting additional time or hearings, and agreed that they had had a sufficient opportunity to respond.

¶19    In its order denying the Defendants' motions to strike, the District Court pointed out that, if it granted the motions, it could deny Tenants' motion to certify without prejudice because the motions to strike were based on lack of evidence, rather than a failed legal argument.  Accordingly, the court concluded, "The only result of Defendants'

tactical maneuver here would be to delay these proceedings by several months, multiply fees on both sides, and make this Court revisit the exact issues that are currently before it with the same or similar evidence." The court determined that, because it gave Riverstone and Owners an opportunity to respond and to request additional hearings, Riverstone and Owners would not be prejudiced by the new evidence.

¶20 The District Court preempted concerns about accepting the new evidence by allowing Riverstone and Owners the opportunity to file sur-replies and to request further hearings. Although Riverstone and Owners argue that they were unable to rebut Mayer's statement that Tenants' damages are easy to ascertain, Riverstone and Owners have not demonstrated what they would have gained from additional discovery on the contents of the spreadsheets that may have affected the class certification ruling. Tenants do not seek actual damages, but seek only the statutory damages available under § 70-24-403, MCA. Tenants claim that Riverstone's *inclusion*, rather than *enforcement*, of allegedly prohibited provisions in Riverstone leases violated the Landlord-Tenant Act and the Security Deposit Act. Further, Riverstone's form letter to residents of all four apartment complexes purporting to eliminate the allegedly prohibited lease provisions implicitly acknowledges that those provisions are easily identified and uniform across all Riverstone leases. The court did not act arbitrarily, without conscientious judgment, or exceed the bounds of reason by admitting Tenants' evidence in these circumstances. The District Court did not abuse its discretion in denying Riverstone's and Owners' motions to strike.

12

¶21 *2. Whether the District Court abused its discretion in determining that the proposed class satisfied M. R. Civ. P. 23(a)'s prerequisites to class certification.*

¶22 Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Mattson*, ¶ 18 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01, 99 S. Ct. 2545, 2557 (1979)). "Departure from the usual rule is justified if the class representative is part of the class and has the same interest and injury as the class members." *Sangwin v. State*, 2013 MT 373, ¶ 12, 373 Mont. 131, 315 P.3d 279 (citation omitted). Discussed above, Rule 23 of the Montana Rules of Civil Procedure governs class certification in Montana.

¶23 Under Rule 23(a) the party seeking certification must establish that the class meets the requirements of numerosity, commonality, typicality, and adequate representation. *Chipman*, ¶ 43. A district court may certify a class only if it is satisfied, after conducting a "rigorous analysis," that each of these requirements is met. *Chipman*, ¶ 44 (citations omitted). Conducting a "rigorous analysis" may entail analyzing some merits issues, but only to the extent that those issues are relevant to determining whether the Rule 23 requirements are satisfied. *Chipman*, ¶ 44.

¶24 Riverstone and Owners dispute the District Court's determination that the proposed class satisfied Rule 23(a)'s commonality, typicality, and adequate representation standards; they do not dispute numerosity.

### A. Commonality

¶25 To meet the commonality requirement, Tenants must show that "there are questions of law or fact common to the class." M. R. Civ. P. 23(a)(2). Historically,

Montana followed federal jurisprudence imposing a "relatively low," easily satisfied burden on plaintiffs to prove commonality. *Chipman*, ¶ 47. That standard required plaintiffs to demonstrate a "common nucleus of operative facts"—that "a single issue was common to all class members, regardless of differences among the class." *Chipman*, ¶ 47 (internal quotations and citations omitted). However, in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___, 131 S. Ct. 2541 (2011), the U.S. Supreme Court "significantly tightened" the federal commonality requirement. *Sangwin*, ¶ 18 (quoting *Chipman*, ¶ 47). Under *Wal-Mart*, claims by class members and their representatives "must depend upon a common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at ___, 131 S. Ct. at 2545.

¶26 The District Court determined that the class in this case satisfied Rule 23(a)(2)'s commonality requirement even under *Wal-Mart*'s more stringent standard because the validity of the prospective class members' claims hinged on a single issue: whether Tenants all had leases through Riverstone that contained at least one prohibited provision entitling them to statutory damages under Montana law. In reaching its decision, the court conducted a rigorous analysis of the facts and relied on our recent precedent construing the commonality requirement.

¶27 In *Chipman*, we considered a district court's certification of a class of employees who sued their employers, a parent healthcare company and its subsidiaries, over benefit

14

buy-back programs. *Chipman*, ¶¶ 5-6. Although the employers contended that each employee had different circumstances requiring a fact-specific, individual analysis, the district court found that the employers implemented a uniform buy-back policy with respect to all employees. *Chipman*, ¶¶ 51-52. We affirmed, recognizing that although dissimilarities within the proposed class existed, "common facts connect all class members in relation to the ultimate resolution" of the dispute. *Chipman*, ¶ 52 ("A court's determination of whether a standardized group contract exists and the legal obligations of the parties will generate common answers applicable to all class members.").

¶28 Like the plaintiffs in *Chipman*, Tenants allege that Riverstone and Owners participated in a "uniform course of conduct" that was prohibited by Montana law. Although Riverstone and Owners contend that not every prospective class member's lease had the same allegedly prohibited provisions, the District Court pointed out:

> Defendants considered the leases so similar that a uniform letter was sent to all 'residents' at each of the four buildings . . . purportedly striking certain provisions from the leases, stating that provisions would not be enforced, or unilaterally changing the language of the contracts. The letters acknowledged that there were differences in the leases, but implied that the single generic letter was sufficient to address any of the problems in lease language.

¶29 Riverstone and Owners do not dispute that all of the leases for the putative class members contained at least one of the seven challenged provisions.[3] Because Tenants' allegations concern the general business practice of Riverstone and Owners to use leases with allegedly prohibited provisions, the court determined that slight differences in the

---

[3] Moreover, a review of Tenants' spreadsheet indicates that the majority of Riverstone leases contained several of the allegedly prohibited lease provisions.

15

leases did not preclude commonality. Following our reasoning in *Chipman*, we agree that, although "[d]issimilarities within the proposed class exist, . . . common facts connect all class members in relation to the ultimate resolution of this dispute." *Chipman*, ¶ 52. Determining in a class-wide proceeding whether the standard form leases used by Riverstone violate the Landlord-Tenant Act will "generate common answers apt to drive the resolution of the litigation." *Chipman*, ¶ 48 (quoting *Wal-Mart*, 564 U.S. at ___, 131 S. Ct. at 2551) (emphasis removed). Further, Tenants are not requesting actual damages, but only those set pursuant to the statutory formula, which the District Court noted easily could be calculated based on each class member's monthly rent. That Tenants did not all pay the same amount of rent is not an obstacle to this determination. Such individualized damage inquiries generally do not preclude class certification. *See Mattson*, ¶ 38 (citations omitted).

¶30　　The District Court also rejected Riverstone's and Owners' argument that Tenants' Security Deposit Act claims rendered the class inappropriate. The court reasoned that, although enforcement of the security deposits provisions determines whether a landlord has violated the Act, Tenants' filings in this case concerned only the inclusion of allegedly unlawful provisions in the leases, not specific wrongful deductions from security deposits. Riverstone argues that Tenants impermissibly attempted to bootstrap their Security Deposit Act claims into the rental agreement prohibitions of the Landlord-Tenant Act. Riverstone faults the District Court for failing to analyze whether the mere inclusion of provisions in a lease that could authorize deductions in violation of

16

the Security Deposit Act is a violation of the Landlord-Tenant Act. The Tenants' First Amended Complaint seeks a declaratory ruling that leases with the allegedly prohibited provisions are unenforceable. Whether a lease may violate the Security Deposit Act without an attempt to enforce an allegedly prohibited provision is an issue of law at the heart of the Tenants' complaint. Likewise, the issue whether the inclusion of certain security deposit provisions in violation of the Security Deposit Act violates the Landlord-Tenant Act is an issue of law that can be decided by a court at one time for all class members. Accordingly, the District Court correctly concluded that it was inappropriate to rule on those issues at the certification stage.

¶31 Additionally, the fact that not all class members have Security Deposit Act claims does not preclude class certification. As with provisions that allegedly violate the Landlord-Tenant Act, certain leases contained certain of the allegedly prohibited provisions while others did not, but the slight differences between leases do not preclude commonality on the issue whether the provisions violate Montana law.

¶32 Finally, Owners contend that the District Court's use of an "and/or" clause in its definition—"All persons who had apartment rental agreements . . . contain[ing] illegal rental provisions in violation of the [Landlord-Tenant Act] and/or the [Security Deposit Act]"—renders the class "so amorphous and diverse, it cannot be reasonably clear that the proposed class members have all suffered a constitutional or statutory violation." (quoting *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980)). Owners assert that this ambiguity necessitates an impermissible determination on the merits. We disagree.

17

The District Court's class definition clearly encompasses persons who had a lease through Riverstone that contained at least one provision in violation of Montana statutory law. The court's use of "and/or" under these circumstances does not invalidate its certification of a class because, although some leases allegedly violate the Landlord-Tenant Act, some allegedly violate the Security Deposit Act, and some allegedly violate both Acts, an individual lease need contain only one of the challenged provisions in order to fall under the class definition. Although there may be dissimilarities as to which of the seven allegedly prohibited provisions each lease contains, Riverstone's use of a form letter to all tenants acknowledges that the provisions easily are identified in Riverstone's standard form leases. As in *Chipman*, the common issue—whether Riverstone leases contained provisions in violation of Montana law—connects all members in relation to the ultimate resolution of the dispute.

¶33 The proposed class satisfies Rule 23(a)(2)'s commonality requirement under the more stringent *Wal-Mart* standard. All class members are connected by the existence of allegedly prohibited provisions in their leases with Owners through Riverstone. The District Court, after conducting a thorough analysis of the facts and circumstances of this case, did not abuse its discretion in determining that Tenants' proposed class met Rule 23(a)(2)'s commonality requirement.

### B. Typicality

¶34 Mullan argues that the District Court erred in certifying a class against it when there was no relationship between Mullan and any of the named plaintiffs. Under M. R.

18

Civ. P. 23(a)(3), "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Typicality, which "tends to merge" with commonality, *Sangwin* ¶ 21 (citation omitted), is "designed to ensure that the named representatives' interests are aligned with the class's interests, the rationale being that a named plaintiff who vigorously pursues his or her own interests will necessarily advance the interests of the class." *Diaz v. Blue Cross & Blue Shield*, 2011 MT 322, ¶ 35, 363 Mont. 151, 267 P.3d 756 (citations and quotation marks omitted). Typicality is not a demanding standard: it is met if a named plaintiff's claim "stems from the same event, practice, or course of conduct that forms the basis of the class claims and is based upon the same legal or remedial theory." *Sangwin*, ¶ 21 (quoting *Diaz*, ¶ 35) (emphasis removed and internal quotation marks omitted). "The event, practice, or course of conduct need not be identical." *Sangwin*, ¶ 21 (citing *Diaz*, ¶ 35).

¶35 Generally, typicality "prevents plaintiffs from bringing a class action against defendants with whom they have not had any dealings." *Sangwin*, ¶ 21 (citation omitted). However, an exception to this general rule occurs in "instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute will be expeditious." *Murer v. Mont. State Comp. Mut. Ins. Fund*, 257 Mont. 434, 438-39, 849 P.2d 1036, 1039 (1993) (citing *La Mar v. H & B Novelty and Loan Co.*, 489 F.2d 461, 465 (9th Cir. 1973)). In *Chipman*, we noted that courts have applied this "juridical link doctrine" to "circumstances in which 'all the defendants took part in a similar scheme that was sustained either by a contract or conspiracy, or was mandated by

19

a uniform state rule,' such that it was 'appropriate to join as defendants even parties with whom the *named* class representative did not have direct contact.'" *Chipman*, ¶ 40 (quoting *Payton v. Cnty. of Kane*, 308 F.3d 673, 679 (7th Cir. 2002) (emphasis in original)) (citing *Moore v. Comfed Sav. Bank*, 908 F.2d 834, 838-39 (11th Cir. 1990); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423-24 (6th Cir. 1998)). We further noted that "many courts have applied the juridical link doctrine to allow a plaintiff to join additional defendants with identical obligations under a contract." *Chipman*, ¶ 40 (citing *Weld v. Glaxo Wellcome, Inc.*, 434 Mass. 81, 746 N.E.2d 522, 530 (Mass. 2001); *In re Activision Sec. Litigation*, 621 F. Supp. 415, 432 (N.D. Cal. 1985)).

¶36 Considering sample leases from each apartment complex, the District Court determined that leases for apartments at Shiloh Glen and Mullan were substantially similar to leases for apartments at Wildflower and Creekside, so that class members who resided in those complexes would have the same claims as the named plaintiffs. The contractual relationship between Owners and Riverstone, and their use of common leases, thus constituted the juridical link between Owners and the named plaintiffs, whether or not the named plaintiffs resided in a particular owner's complex. Mullan contends that Tenants have not met the typicality requirement because prospective class members that resided in Mullan would have different claims or defenses requiring an individual factual analysis for each complex, especially given that Mullan was not in operation until 2012. Despite this contention, Riverstone and Owners have not shown why the common class question—whether certain lease provisions violated Montana law—would not be

20

answerable on a class-wide basis. The named parties share this common question with current and former residents of Shiloh Glen and Mullan, even if the named parties never resided in those complexes. Mullan further contends that "each owner had a separate relationship with Riverstone" warranting an individual factual analysis. However, the District Court determined that Owners all used similar leases through Riverstone, and that Riverstone served as a property manager for all four apartment complexes; none of the Appellants have rebutted these determinations.

¶37 Moreover, in its July 30, 2014 order granting Tenants' motion to amend their first amended complaint, the District Court allowed Tenants to add former residents of Mullan and Shiloh Glen as named plaintiffs. The court concluded that Riverstone and Owners would suffer no prejudice because the addition was not necessary to its ruling on class certification. We have observed that "class action certification orders 'are not frozen once made,'" and that a district court has broad discretion to alter or amend such orders "based on the circumstances developing as the case unfolds." *Diaz v. State*, 2013 MT 219, ¶ 28, 371 Mont. 214, 308 P.3d 38 (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, ___ U.S. ___, ____, 133 S. Ct. 1184, 1202 n.9 (2013)). The addition of new class representatives ameliorated Mullan's concerns. Tenants' failure to include residents from all four complexes in their initial or first amended complaints does not defeat the propriety of class certification.

¶38 The District Court concluded that Owners' use of the Riverstone leases constituted an event, practice, or course of conduct that the class representatives share with the class.

The District Court did not act unreasonably in making this determination; its findings of fact were not clearly erroneous, and its conclusions of law were correct. The District Court did not abuse its discretion in determining that Tenants satisfied Rule 23(a)(3)'s typicality requirement.

### C. Adequate representation

¶39 "Adequate representation requires that the named representatives' attorney is qualified, competent, and able to conduct the litigation, and that the named representatives' interests are not antagonistic to the class interests." *Sangwin*, ¶ 27 (citing *Chipman*, ¶ 57). The parties do not dispute that Tenants' attorneys are qualified to bring this action. Rather, Riverstone contends that the named parties do not adequately represent the interests of the class, claiming that the named parties do not have Security Deposit Act claims because Riverstone has not yet deducted any amount from their security deposits. As discussed earlier, Tenants seek a ruling that certain provisions of the Riverstone leases violated the Security Deposit Act and are thus unenforceable. Because that remedy does not depend on a determination that a deduction from a security deposit has been made, Tenants' interests in resolving this issue are not antagonistic to the class interests. Tenants also claim entitlement to statutory damages due to the Defendants' "knowing inclusion" of prohibited lease provisions. Whether they are entitled to that remedy for their Security Deposit Act claims is an issue of law appropriate for resolution on a class-wide basis, even if the class representatives do not share

22

identical provisions in their leases with all members of the class. The District Court did not abuse its discretion in determining that Tenants adequately can represent the class.

¶40   *3. Whether the District Court abused its discretion by certifying the class under M. R. Civ. P. 23(b)(3).*

¶41   "Once the Rule 23(a) prerequisites are satisfied, the analysis shifts to Rule 23(b), which sets forth additional requirements depending on the type of class action sought." *Mattson*, ¶ 17. Tenants sought class certification under M. R. Civ. P. 23(b)(3). Accordingly, Tenants were required to show that the class met Rule 23(b)(3)'s predominance and superiority requirements—that "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." M. R. Civ. P. 23(b)(3). Rule 23(b)(3) further states,

> The matters pertinent to the[se] findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

M. R. Civ. P. 23(b)(3).

¶42   We have recognized that "class determination is appropriate when the class members' claims 'depend on a common contention that is capable of classwide resolution.'" *Sangwin*, ¶ 37 (quoting *Chipman*, ¶ 48). In *Sangwin*, we held that the question the district court certified—whether the State breached health insurance contracts with plaintiffs by denying insurance claims—did not meet Rule 23(b)(3)'s

23

predominance requirement. In reaching that decision, we noted that the plaintiffs conceded that determining whether an individual's claims were properly denied necessitated an individual assessment of each claim and its underlying documentation before the plaintiffs could establish liability. *Sangwin*, ¶ 36. Because common issues did not predominate over the individual circumstances giving rise to denial of individual insurance claims, the question certified was "incapable of being resolved on a classwide basis." *Sangwin*, ¶ 37.

¶43 In this case, the District Court concluded that Tenants met the Rule 23(b)(3) predominance and superiority requirements. The court noted that the circumstances in *Sangwin* were different from the circumstances in this case because, here, the question is whether the lease agreements contained prohibited provisions, not whether the allegedly prohibited provisions were wrongfully enforced. The District Court thoroughly considered each pertinent issue listed in Rule 23(b)(3), finding that: (1) because each individual plaintiff's claim was small, it was "reasonable to expect that the individual plaintiffs would want to pool their resources in pursuing a claim;" (2) there was no pending or prior litigation on this issue by or against class members; (3) it was desirable to concentrate the litigation of the claims in one forum "to conserve judicial resources and avoid disparate results and potentially over 800 different lawsuits based on the same or similar leases and same legal theories;" and (4) it likely would not be difficult to manage the class action.

¶44 Riverstone and Owners assert that the District Court abused its discretion by certifying a class that does not meet the requirements of predominance or superiority. According to Riverstone, individual questions regarding damages and individual questions regarding separate defenses available to each defendant predominate over any common questions. Riverstone bases much of its argument that Tenants cannot meet the predominance requirement on its contention that Tenants' Security Deposit Act claims require individual analysis. We already have concluded that the Security Deposit Act claims do not require individual factual analysis. We apply the same reasoning to the predominance requirement. Tenants allege that the inclusion of certain provisions in the Riverstone leases itself violated the Security Deposit Act; they do not allege that Riverstone has enforced those provisions in violation of the Security Deposit Act. Therefore, Tenants' inclusion of prospective class members with Security Deposit Act claims does not preclude Tenants from meeting the predominance requirement.

¶45 Riverstone also contends that Tenants cannot meet the predominance requirement for Tenants' Landlord-Tenant Act claims because the Landlord-Tenant Act gives courts discretion to award damages on a case-by-case basis. *See* § 70-24-403(2), MCA ("If a party purposefully uses a rental agreement containing provisions known by the party to be prohibited, the other party *may* recover, in addition to . . . actual damages, an amount up to 3 months' periodic rent." (emphasis added)). Individual damages calculations typically do not defeat a finding that common issues predominate. 2 William B. Rubenstein, Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 4:54,

25

206-09 (5th ed. 2011); *see also Sangwin*, ¶ 37; *McDonald v. Washington*, 261 Mont. 392, 403-04, 862 P.2d 1150, 1157 (1993) (holding that, although damages calculations required each member of a class individually to prove a quantity of gasoline purchased at supracompetitive prices and the prices paid, this did not preclude class determination because the common issues that determined liability predominated).

¶46　　In *Mattson*, we determined that a class met the predominance requirement even when class members' individual damages calculations varied significantly due to the widely varying characteristics of the class members' damaged shoreline properties. *Mattson*, ¶¶ 40-41. We noted, "The only individual questions in this lawsuit relate to the amount of damages," which "does not negate class certification as to *liability*." *Mattson*, ¶ 41 (emphasis in original). As previously stated, Tenants allege that each class member's claim requires one common question to be answered: whether Montana law prohibited certain provisions in the Riverstone leases. This is a common question of law that can be decided by a district court at one time, avoiding hundreds of individual trials. Tenants demonstrated the ease of determining whether any individual class member's lease contains a prohibited provision through their spreadsheet consolidating the approximately 800 leases and identifying which of the allegedly prohibited provisions each lease contained. Tenants' claims for damages pursuant to a statutory formula—up to three months' rent—present a stronger case for predominance than did the *Mattson* class members' claims because the circumstances in *Mattson* required an in-depth

26

individual analysis of the wide-ranging characteristics and value of each damaged shoreline property.

¶47 Mullan asserts that Tenants have not met predominance because, in order to be liable under the Landlord-Tenant Act, a party must "purposefully" use a rental agreement with prohibited provisions. Section 70-24-403(2), MCA. Mullan contends that the District Court did not consider the fact that each of the Owners may have an individual defense. Specifically, Mullan asserts that its liability hinges on individual factual analyses to determine whether a purported class member was an actual tenant of Mullan and whether his or her tenancy coincided with a period in which the lease agreement contained prohibited provisions. According to Mullan, these individual issues "clearly predominate" over the common question whether the Riverstone leases contained prohibited provisions. We disagree. As discussed above, Tenants' spreadsheet demonstrates a simple method of ascertaining the answers to both of these questions. Extensive individual inquiries analyzing time periods during which Tenants resided in a particular apartment complex and whether a particular lease contained a particular provision will not be necessary. Accordingly, the District Court's findings of fact were not clearly erroneous, its legal conclusions were correct, and it did not abuse its discretion in determining that a common question predominates over the individual questions in this case.

¶48 Riverstone and Owners contend that class adjudication is inferior to other available methods for fairly and efficiently adjudicating the controversy. The District

27

Court rejected these arguments, concluding that the simplest way to determine whether provisions in the Riverstone leases violated Montana law would be to consider the seven provisions in one single trial, rather than holding over 800 individual trials. The District Court did not abuse its discretion in making this determination. Individual tenants likely could not afford to bring separate claims for what is an alleged illegality in a standard lease form widely used by Riverstone. By contrast, as the District Court noted, a class action would save the resources of the courts and parties by permitting a common question of whether Riverstone leases contained prohibited provisions to be litigated in an economical fashion.

## CONCLUSION

¶49   We affirm the District Court's decision and order.

/S/ BETH BAKER

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE