FILED

10/13/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0682

DA 19-0682

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 258

JACK KRAMER and KEN KRAMER, individually and
on behalf of all others similarly situated,

      Plaintiffs and Appellees,

   v.

FERGUS FARM MUTUAL INSURANCE COMPANY,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and For the County of Yellowstone, Cause No. DV-19-0360
                Honorable Michael G. Moses, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Matthew B. Hayhurst, Christopher L. Decker, Boone Karlberg P.C.,
            Missoula, Montana

      For Appellees:

            Sean M. Morris, Jesse C. Kodadek, Martin Rogers, Worden Thane, P.C.,
            Missoula, Montana

                            Submitted on Briefs:  July 22, 2020

                                    Decided:  October 13, 2020

Filed:

                        _____
                                  Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Plaintiffs-Appellees, Jack and Ken Kramer (Kramers) brought this action against Defendant-Appellant, Fergus Farm Mutual Insurance Company (FFM), alleging breach of contract and violation of Montana's Unfair Trade Practices Act (UTPA), §§ 33-18-101, *et. seq.*, MCA.   FFM appeals the order of the Thirteenth Judicial District Court, Yellowstone County, granting class certification.  *See* M. R. Civ. P. 23(f); M. R. App. P 6(3)(d).

¶2     We restate the issues on appeal as follows:

1. *Did the District Court abuse its discretion in its class certification by determining that common questions of law predominate under M. R. Civ. P. 23(b)(3)?*

2. *Did the District Court abuse its discretion in its class certification by entering incorrect conclusions of law and clearly erroneous findings of fact?*

¶3     We affirm in part, reverse in part, and remand for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

¶4     On May 21, 2016, the Kramers' house, detached garage, and small shed were damaged during a hailstorm.  At that time, Kramers owned a homeowner's insurance policy insuring their property, issued by FFM.  Under the policy, for covered losses Kramers were entitled to payment of "Actual Cash Value" (ACV),[1] less a deduction for depreciation, following an adjuster's determination of the amount needed for repairs or replacement

---

[1] Defined, in pertinent part, as the smallest of either "the cost to repair or replace the property with materials of like kind and quality to the extent practical" or "the actual cash value of the [damaged] property at the time of loss."

value. Even if the insured chooses to forego repairs, FFM pays the ACV amount to the insured. FFM paid Kramers $35,966.63 in ACV payments, which did not include an amount for General Contractor Overhead and Profit (GCOP).[2]

¶5      Under the policy, if the insureds repair the property, they are entitled to payment of Replacement Cost Value (RCV),[3] which is essentially the amount withheld for depreciation under the ACV payment. In a policy endorsement issued prior to Kramers' loss, FFM expanded the definition of "Replacement Cost Terms" to state, "[t]he smaller of the following amounts is used in applying the 'terms' under Our Limit: 1) the cost to repair or replace the damage on the same premises using materials of like kind and quality, to the extent practical; or 2) the amount actually and necessarily spent to repair or replace the damage."

¶6      FFM follows an internal practice to pay GCOP if an adjuster determines a general contractor is "reasonably necessary" for repairs. The District Court found, "this 'reasonably necessary' standard is widely used in the insurance industry when calculating possible GCOP payments," but the standard or practice is not stated in FFM's insurance policy. The parties disputed whether FFM's "reasonably necessary" inquiry included consideration of the "three-trade rule." As used by the parties in the litigation, the

---

[2] A general contractor bills GCOP for coordinating repairs among subcontractors. The District Court found, in its class certification order, that the GCOP charge "typically reflects an amount equal to 10% for overhead costs and 10% for profit combining for a total additional charge of 20%."

[3] Defined as "the cost to repair or replace the property with new property of equivalent kind and quality to the extent practical, without deduction for depreciation."

3

"three-trade rule" is a practice of determining that a general contractor and, accordingly, payment of GCOP costs, is reasonably necessary when three trades are employed to complete the repairs.

¶7 Kramers hired Jon Hooley of Big Sky Contractors to complete the repairs to their property. Although FFM disputed Hooley's general contractor service as reasonably necessary for completion of the repairs, FFM agreed to include GCOP charges in the RCV payment, on the condition that Kramers submit subcontractor invoices and photos of the completed repairs. Kramers did not provide the requested documentation, and FFM refused to pay GCOP charges.

¶8 In March 2019, Kramers filed an action against FFM alleging breach of contract and violation of Montana's UTPA. The complaint alleged FFM breached the insurance contract with the Kramers and all other insureds by failing to include GCOP in the "cost to repair or replace" the Kramers' property. Further, Kramers alleged FFM "systematically refus[ed] to pay its insureds the reasonable value of general contractor overhead and profit" in violation of the UTPA, which constituted actual fraud and actual malice. The complaint also sought certification of a class of insureds. FFM's answer denied the complaint's assertions about the policy, asserting the policy "speaks for itself," and denied it had refused to pay profit and overhead, asserting the documentation requested from subcontractors was "necessary to determine the amount, if any, owed under the terms of the policy."

¶9 After briefing and hearing, the District Court granted Plaintiffs' motion for class certification, stating that "[a]ll class members' insurance policies contain similar loss settlement provisions making these questions applicable as the policies do not directly address the question of GCOP." The District Court certified two classes, the "ACV Class" and the "RCV Class," as submitted by Plaintiffs. The ACV Class was defined as:

> All Fergus Farm Mutual policy holders a) who made an actual cash value claim for residential and associated structural loss under a farm owner or homeowner policy; b) from March 28, 2009 to the present; c) where Fergus Farm Mutual accepted liability, and its own records show that at least three subcontractors would be required to complete the repairs; but d) where the actual cash value payment did not include an additional 20% payment for general contractor overhead and profit, unless the insured was paid that full amount as part of the replacement cost value payment.

The RCV Class was defined as:

> All members of the ACV Class a) who have replacement cost value policies; b) received an initial actual cash value payment; c) went on to complete the identified repairs and were paid the previously held back replacement cost value payment; but d) who were not paid an additional 20% for general contractor overhead and profit as part of their replacement cost value payment.

The District Court reasoned that two questions predominate in the action:

> 1) whether the Defendant's policy language regarding the insurer's duty to tender GCOP payments at both the ACV and RCV stages is so ambiguous as to be unfair; and 2) whether the Defendant's claim settlement practices with regard to GCOP fees are or are not in conformance with those practices of other Montana insurers as to be in violation of Montana's Unfair Trade Practices Act.

¶10 FFM appeals.

**STANDARD OF REVIEW**

¶11 This Court reviews a district court order granting class certification for an abuse of discretion. *Knudsen v. Univ. of Mont.*, 2019 MT 175, ¶ 6, 396 Mont. 443, 445 P.3d 834 (citing *Sangwin v. Montana*, 2013 MT 373, ¶ 10, 373 Mont. 131, 315 P.3d 279). "The question is not whether this Court would have reached the same decision, but whether the district court acted arbitrarily without conscientious judgment or exceeded the bounds of reason." *Sangwin*, ¶ 10 (citing *Chipman v. N.W. Healthcare Corp.*, 2012 MT 242, ¶ 17, 366 Mont. 450, 288 P.3d 193). When reviewing a decision on class certification, this Court affords the trial court the broadest discretion because it "is in the best position to consider the most fair and efficient procedure for conducting any given litigation." *Sangwin*, ¶ 10 (citing *Jacobsen v. Allstate Ins. Co.*, 2013 MT 244, ¶ 25, 371 Mont. 393, 310 P.3d 452).

¶12 A district court abuses its discretion if its certification order is premised on legal error. *Mattson v. Mont. Power Co.*, 2012 MT 318, ¶ 17, 368 Mont. 1, 291 P.3d 1209 (internal citation and quotation marks omitted). Likewise, when a district court's decision is not supported by findings as to the applicability of Rule 23 criteria, it is not entitled to the traditional deference given to determinations of class status. *Mattson*, ¶ 17 (internal citation and quotation marks omitted). To the extent that the ruling on a Rule 23 requirement is supported by a finding of fact, that finding, like any other finding of fact, is reviewed under the clearly erroneous standard; and to the extent that the ruling involves an issue of law, review is *de novo*. *Jacobsen*, ¶ 25 (internal citation and quotation marks omitted).

¶13    This Court is reluctant to interfere with discretionary orders in the early stages of litigation. *Diaz v. State*, 2013 MT 219, ¶ 20, 371 Mont. 214, 308 P.3d 38. The trial court has flexibility to modify its certification orders, which are made at an early stage in the case, when the facts are disputed and discovery incomplete. M. R. Civ. P. 23(c)(1)(C); *Diaz*, ¶ 20.

**DISCUSSION**

¶14    Class action lawsuits are an exception to the "usual rule that litigation is conducted by and on behalf of the individual named parties only." *Mattson*, ¶ 18 (citing *Califano v. Yamasaki*, 442 U.S. 682, 700 –01, 99 S. Ct. 2545, 2557 (1979)). Class actions seek to conserve resources and further economy—both judicially and that of similarly-situated parties—by allowing the single litigation of common issues of fact and law. *Knudsen*, ¶ 7 (citing *Roose v. Lincoln Cty. Emp. Grp. Health Plan*, 2015 MT 324, ¶ 14, 381 Mont. 409, 362 P.3d 40). Class actions must meet four preliminary requirements of M. R. Civ. P 23(a)—numerosity, commonality, typicality, and adequate representation—and satisfy any subsection of M. R. Civ. P 23(b) to be certified. *Knudsen*, ¶ 7 (citing *Roose*, ¶ 14).

¶15    The four requirements of M. R. Civ. P. 23(a) ensure the "named plaintiffs are appropriate representatives of the class whose claim they wish to litigate and effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Mattson*, ¶ 18 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349, 131 S. Ct. 2541, 2550 (2011)) (internal quotations omitted). Once a party has demonstrated the preliminary requirements of M. R. Civ. P. 23(a), then M. R. Civ. P. 23(b) must be satisfied, "which sets

forth additional requirements depending on the type of class action sought." *Worledge v. Riverstone Residential Grp., LLC*, 2015 MT 142, ¶ 41, 379 Mont. 265, 350 P.3d 39 (citing *Mattson*, ¶ 18). The party seeking class certification must prove "in fact" the requirements of 23(a) and "satisfy through evidentiary proof" any individual provision of 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S. Ct. 1426, 1432 (2013) (citing *Wal-Mart*, 569 U.S. at 350, 131 S. Ct. at 2551).

¶16     *1. Did the District Court abuse its discretion in its class certification by determining that common questions of law predominate under M. R. Civ. P. 23(b)(3)?*

¶17     FFM's arguments center on the certification requirement of predominance. M. R. Civ. P. 23(b)(3). FFM argues "[t]he only question the putative class members might share in this case is whether a general contractor's services were 'reasonably necessary,' thus requiring payment of GCOP," which FFM contends is a question not capable of classwide resolution because it is dependent upon the facts of each class member's loss, and requires individualized assessment of damages. FFM cites cases that have rejected class certification for questions regarding "the necessity of a general contractor" or whether an insurer "should apply the three-trade rule." However, FFM's arguments bypass its policy contract, and focus on its internal practices, which are not stated in the policy, and which FFM improperly assumes are valid. Rather, a threshold question here is whether FFM's internal practices are themselves consonant with the policy issued to its insureds, or whether they constitute a breach of the policy. That is a question of law shared by all class members, regardless of whether their individual repairs required three trades or otherwise

8

reasonably necessitated a general contractor, and is different than the questions rejected for class certification in the cases cited by FFM.

¶18 Under M. R. Civ. P. 23(b)(3), the court must find that "questions of law or fact common to the class members predominate over any questions affecting only individual members." As we have explained:

> The predominance inquiry focuses on the relationship between the common and individual issues and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. Rule 23(b)(3)'s predominance and superiority requirements were added to cover cases in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. Accordingly, a central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy.

*Mattson*, ¶ 39 (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009)).

¶19 In *Sangwin*, we reasoned that a common question of contractual breach could not be answered unless individual assessments were first made to determine whether an individual's claims were properly denied and, thus, the common question was not predominant. *See Sangwin*, ¶ 37 ("Because factual questions must be answered on an individual basis before the plaintiffs will be in a position to establish liability, the predominance requirement under Rule 23(b)(3) is not met"). Here, the reverse is true. Before any individual inquiry would be necessary, FFM's duty under the policy regarding GCOP expenses must first be determined as a matter of law, including whether its internal practices, unstated in the policy, constitute a breach of that duty.

9

¶20    Further, individualized questions of damages typically do not negate class certification as to contractual liability.  *Knudsen*, ¶ 22 (internal citations omitted); *Worledge*, ¶ 45 (citing 2 William B. Rubenstein, Alva Conte & Herbert Newberg, *Newberg on Class Actions* § 4:54 206–09 (5th ed. 2011)).  In *Knudsen*, this Court rejected the University of Montana's argument that individual questions of damage calculations predominate over a common issue of liability.  *Knudsen*, ¶ 22.  Determining whether the University was liable for allowing excessive fees and transmitting personal information would "move the litigation forward and be answered the same for all class members," regardless of individualized calculations of damages.  *Knudsen*, ¶ 24.

¶21    The circumstances here are similar, requiring a common threshold determination about FFM's duty to the insureds under the policy.  About the issue of commonality, the District Court concluded as follows:

> a standard and uniform insurance policy applies to all members of the would-be classes.  These policies all contain settlement loss provisions which were silent on the matter of the GCOP charges and how those costs would be dealt with at the ACV or RCV stages in claim processing.  The questions of whether these policies conveyed a duty on the Defendant to include a payment for GCOP in the ACV payment and RCV payment present and will resolve a common issue at the heart of each claim raised by the class members.  Therefore, the Plaintiffs have satisfied their burden in demonstrating commonality under Rule 23(a)(2).

¶22    As in *Knudsen*, an answer to this common question will move the litigation forward. The question of FFM's liability to insureds under the policy, including whether a "reasonably necessary" inquiry is appropriate thereunder, predominates over individual assessments that would be subsequently conducted.  Likewise, FFM's arguments

challenging commonality, superiority and typicality, which are also premised on the ultimate necessity of individual assessments, are not persuasive. Clear and common issues of law predominate the litigation and support certification of the class.

¶23 *2. Did the District Court abuse its discretion in its class certification by entering incorrect conclusions of law and clearly erroneous findings of fact?*

¶24 During the course of its assessment of predominance, the District Court appeared to rule on issues of law and fact that bear heavily upon, if not resolve, ultimate determinations on the merits, while at the same time acknowledging that factual conflicts remain to be resolved about these issues. Appellant argues the rulings were not only incorrect, but also undermine the court's granting of class certification.

¶25 Prior to certifying a class, the court must make a "rigorous analysis" that the preliminary requirements of Rule 23 are satisfied. *Sangwin*, ¶ 15 (citing *Comcast*, 569 U.S. at 33, 133 S. Ct. at 1432). This analysis frequently "overlaps" with the merits of the underlying claim because class determinations are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Sangwin*, ¶ 15 (citing *Comcast*, 569 U.S. at 33-34, 131 S. Ct. at 1432). The court may look beyond the pleadings in assessing the merits related to Rule 23 requirements. *Sangwin*, ¶ 15 (citing *Comcast*, 569 U.S. at 33, 131 S. Ct. at 1432). Two standards guide this analysis. First, the court must have "some evidentiary basis" for finding each Rule 23 requirement as properly satisfied. *Byorth v. USAA Cas. Ins. Co.*, 2016 MT 302, ¶ 17, 385 Mont. 396, 384 P.3d 455 (citing *Comcast*, 569 U.S. at 33, 131 S. Ct. at 1432). Second, the court has broad discretion at the certification stage. *Byorth*, ¶ 18 (internal citations omitted). This Court will defer to a trial

11

court's determinations regarding satisfaction of Rule 23 requirements if evidence supports that determination. *Byorth*, ¶ 18.

¶26 The District Court concluded the policy was ambiguous with regard to the processing of GCOP payments, citing conflicting testimony about FFM's use of the "three-trade rule"[4] in the claim settlement process:

> The evidence presented by Plaintiffs regarding the Defendant's representations during the claim settlement process initiated in May 2016 further supports this ambiguity. While the Defendant states that it does and has included GCOP fees in ACV payments when those fees are reasonably necessary but does not use a mechanical "three-trade rule" to determine that necessity, the communications between Plaintiffs and the Defendant's claim representative repeatedly references the presence of three trades. . . . These representations point to the prominence the number of trades involved plays in the Defendant's settlement practice and *presents a factual dispute between what the Defendant states is its practice regarding GCOP fees and what was represented to Plaintiffs as to that practice.* [(Emphasis added)].

Although the District Court acknowledged that factual conflicts remained regarding FFM's claim processing practices, it proceeded to declare the policy ambiguous, in part, because of evidentiary conflicts. Then, reasoning that an ambiguity in a contract must be construed against the drafter, the court held that the entirety of any "reasonably necessary" inquiry conducted by FFM is invalid and must be discarded, without distinguishing its apparent contrary finding that "[t]his 'reasonably necessary' standard is widely used in the insurance industry when calculating possible GCOP payments." While a court may consider the merits of the underlying action in determining the propriety of class certification, we must

---

[4] As noted by FFM, the "three-trade rule" is not mandated by any legal requirement. FFM further contends the rule is not an industry practice.

12

conclude these particular conclusions reached by the District Court were "a bridge too far" at this stage of the litigation.

¶27 We interpret an insurance policy, a question of law, according to its plain language, giving terms and words their usual meaning and construing them with common sense. *Associated Dermatology & Skin Cancer Clinic of Helena v. Mountain West Farm Bureau Mut. Ins. Co.*, 2017 MT 30, ¶¶ 10-11, 386 Mont. 298, 389 P.3d 1027 (internal citations omitted). The Court must enforce insurance contracts as written. *American States Ins. Co. v. Flathead Janitorial & Rug Serv.*, 2015 MT 239, ¶ 12, 380 Mont. 308, 355 P.3d 735 (internal citation omitted). "An ambiguity exists where the language of a contract, as a whole, reasonably is subject to two different interpretations." *West v. The Club at Spanish Peaks L.L.C.*, 2008 MT 183, ¶ 53, 343 Mont. 434, 186 P.3d 1228 (internal citation omitted). "[W]hen a contract term is ambiguous, interpretation of the term involves determining a question of fact regarding the intent of the parties to the contract." *Spanish Peaks, LLC*, ¶ 53 (internal citation omitted).

¶28 While differing interpretations may render a contract ambiguous, factual disputes about what those interpretations are—how the contract has been applied by the parties—must be resolved as an initial consideration. Of course, "[t]he practical interpretation of a contract, which the parties placed upon it by their course of conduct, is entitled to a great, if not controlling influence in ascertaining what they understood by its terms." *First Nat'l Props., LLC v. Joel D. Hillstead Trust*, 2020 MT 211, ¶ 35, 401 Mont. 59, ___ P.3d ___ (internal citation omitted). Here, the identified factual conflicts about the parties' conduct

13

bearing on the policy's interpretation must be resolved before a determination of contract ambiguity can be made, including whether the "reasonably necessary" inquiry conducted by FFM by internal practice must be rejected as inconsistent with the policy.[5]

¶29     The District Court's focus on ambiguity may have led to a lack of clarity within its articulation of the predominate issues in the litigation.  As noted above, the District Court stated the predominate issues as:

> 1) whether the Defendant's policy language regarding the insurer's duty to tender GCOP payments at both the ACV and RCV stages is so ambiguous as to be unfair; and 2) whether the Defendant's claim settlement practices with regard to GCOP fees are or are not in conformance with those practices of other Montana insurers as to be in violation of Montana's Unfair Trade Practices Act.

¶30     Given that factual conflicts remain about the interpretation of the policy, the first predominate issue, as recognized under Issue 1 above, is whether FFM's processing of claims for GCOP costs constituted a breach of the insurance contract.  The question of ambiguity, as well as the factual contentions over industry practices, will certainly factor into the resolution of this contract issue.  The second predominate issue is whether FFM's claim settlement practices with regard to GCOP costs constituted a violation of Montana's UTPA, § 33-18-101, *et. seq.*, MCA, as being "unfair or deceptive."  Again, the unresolved factual conflicts regarding ambiguity and industry practice will affect the resolution of this question.

---

[5] FFM notes that, in invalidating the "reasonably necessary" inquiry, as well as the requirement of subcontractor documentation, the District Court did not provide an alternative mechanism for determining when and how GCOP is to be paid under the policy.

14

¶31 While FFM points to these errors to argue against class certification altogether, we agree with the District Court that the identified remaining factual conflicts do not leave Rule 23 unsatisfied. A sufficient factual basis, detailed by the District Court and set forth in the factual and procedural ground herein, has been established to justify certification of the classes. The class definitions themselves are premised upon objectively identifiable claim characteristics that are uncontested.

¶32 With these corrections to the District Court's certification order, we affirm in part, reverse in part, and remand for further proceedings consistent herewith.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA