DA 08-0142

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 35

BRUCE AND IRENE ROHRER,

      Plaintiffs and Appellants,

  v.

GARY L. KNUDSON, MARJORY A. KNUDSON,
Individually and d/b/a G & M PROPERTIES, DELTA
ENGINEERING, P.C., THE CITY OF GREAT FALLS,
and JOHN DOES 1-15,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. CDV-05-538
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Joe Seifert; Keller Reynolds, Drake, Johnson & Gillespie, P.C.,
Helena, Montana

      For Appellees:

            E. Lee LeVeque, Attorney at Law, Great Falls, Montana

Submitted on Briefs:  January 7, 2009

Decided:  February 18, 2009

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Bruce and Irene Rohrer (Rohrers) appeal from a judgment of the Eighth Judicial District Court, Cascade County, entered after a jury verdict denying them recovery on their Montana Consumer Protection Act claims, and apportioning negligence 10% to Defendant Gary Knudson (Knudson), 45% to (settled) Defendant City of Great Falls, and 45% to Plaintiffs Rohrers.  We reverse and remand for a new trial.

¶2     The Rohrers present the following issues for review:

¶3     Whether the District Court abused its discretion in prohibiting the Rohrers from presenting evidence of differential settlement damage to other residences in Bel View Palisades.

¶4     Whether the District Court's instruction defining "unfair practice" under the Montana Consumer Protection Act was a correct statement of the law.

## FACTUAL AND PROCEDURAL BACKGROUND

¶5     The Rohrers purchased an undeveloped lot in the hillside Bel View Palisades subdivision overlooking Great Falls from Knudson in 1999.  The Rohrers built their own home on the lot, finishing construction in 2002.  In 2004, they learned that their neighbors, Kurt and Mary Fagenstrom (Fagenstroms), were sustaining substantial damage to their home from differential settlement.  The Rohrers recognized similar damages developing in their home, including cracked walls, broken floor tiles, and sticking doors.

2

¶6     The Rohrers learned that NTL Engineering had prepared a geotechnical engineering report concluding that the Fagenstroms' home demonstrated substantial differential movement. In February 2005, the Rohrers hired NTL Engineering to do a similar limited evaluation of their lot. Core sampling revealed uncontrolled fill materials to a depth of approximately 31 feet below grade.

¶7     The Rohrers attempted to mitigate their damages by hiring a contractor to install resistance piers on their foundation. They installed 20 piers in March 2005 up to a depth of 55 feet below the foundation. At the time of trial in 2008, one of the piers had failed, the house continued to settle, interior damage increased, and the Rohrers faced installing additional piers.

¶8     Knudson, doing business as G & M Properties, developed many blocks in Bel View Palisades, including Block 20 and Block 22 where the Rohrers built their house. Knudson is a licensed professional engineer, and his firm, Delta Engineering, Inc., engineered the development of Blocks 20 and 22. Knudson is a geologist with expertise in geotechnical engineering and residential foundations.

¶9     Development of Block 22 in the mid-1990s was formally reviewed under the Montana Subdivision and Platting Act, §§ 76-3-101 through -625, MCA. A joint City/County Planning Board approved development subject to several conditions, including requiring Knudson to submit to the Public Works and Community Development Department a report on soil compaction and density tests for anticipated building and public improvement locations. There is some dispute as to whether these soil compaction or density tests were

3

completed on Block 22. While the annexation agreement between Knudson and the City of Great Falls references such tests, Knudson was unable to produce the test results during discovery or at trial.

¶10    Bruce Rohrer investigated the historic topography and development of Block 22 prior to initiating suit. He found information that a ditch and steep railroad embankment existed on Block 22 and that major earth moving activities filled in the ditch and eliminated the railroad embankment sometime before 1964. The Rohrers claimed that Knudson should have been aware of and disclosed the fill conditions on Block 22 for the following reasons: topographical maps used by Knudson to develop Block 22 revealed the historic location of the railroad embankment; publicly available aerial photographs revealed the deep ditch and its elimination over time as the area developed; and Knudson's activities, including grading, recontouring, and excavating the site, would have revealed the widespread fill conditions.

¶11    Rohrers filed this action alleging negligence, negligent misrepresentation, and violations of the Montana Consumer Protection Act. The Rohrers claimed Knudson was negligent in failing to discover and disclose the existence of fill on their lot. Rohrers claimed that Knudson made a negligent misrepresentation when he told Bruce Rohrer that "there's good dirt at curb height," which Bruce Rohrer understood to represent that footings and foundation could be installed without extraordinary precautions. Lastly, the Rohrers claimed that Knudson's failure to perform required soil compaction or density tests was an unfair or deceptive act or practice resulting in damages recoverable under the Montana Consumer Protection Act.

4

¶12 At trial in late January 2008, Knudson claimed that the Rohrers' settlement problems resulted from their own negligence. Ray Womack, an engineering expert, testified that the cause of settlement was "invariably a water problem" resulting from irrigation next to the foundation, poor site grading, and the failure to install drains around the foundation footings.

¶13 The jury verdict denied the Rohrers recovery on their Montana Consumer Protection Act claims, found no negligent misrepresentation, and apportioned negligence 10% to Defendant Knudson, 45% to (settled) Defendant City of Great Falls, and 45% to Plaintiffs Rohrers. The Rohrers appeal.

## STANDARD OF REVIEW

¶14 We review a district court's ruling on the admissibility of evidence for an abuse of discretion. *Payne v. Knutson*, 2004 MT 271, ¶ 20, 323 Mont. 165, 99 P.3d 200. We will not reverse the district court unless the error be "of such character to have affected the result." *Payne*, ¶ 20. The standard of review of a district court's refusal to issue a proposed jury instruction is whether it abused its discretion. *Howard v. St. James Community Hosp.*, 2006 MT 23, ¶ 16, 331 Mont. 60, 129 P.3d 126.

## DISCUSSION

¶15 *Whether the District Court abused its discretion in prohibiting the Rohrers from presenting evidence of differential settlement damage to other residences in Bel View Palisades.*

¶16     On motion prior to trial, Knudson's counsel sought to preclude the Rohrers from presenting evidence of differential settlement damage to any residences in Bel View Palisades other than the Rohrers' and Fagenstroms'. Knudson's counsel argued that such evidence was irrelevant and prejudicial. In response the Rohrers' counsel asserted:

> [I]f the argument is either made or insinuated by the Defense that the Rohrers' house is a unique anomalous occurrence, then I think it would be appropriate to show that there are a number of other homes within shouting distance of their house that are experiencing this, a similar thing.

Knudson's counsel responded, "[w]e don't intend to try to introduce that." The court granted the motion to exclude evidence of damage to residences other than the Rohrers' and Fagenstroms'.

¶17     The Rohrers recite a litany of instances from the trial when Knudson's counsel referred to hundreds of homes in the Bel View Palisades area. They suggest that such testimony was presented to insinuate that damage to the Rohrers' house was unique, and thus likely the result of their own negligence. A review of the record reveals that much of this testimony merely attempted to support Knudson's argument that he did not know of any differential settlement problems at the time the Rohrers built their house. However, some testimony went beyond this legitimate argument and warranted an opportunity for rebuttal.

¶18     In one such instance, Knudson's counsel ended his direct examination of Jean Clary, a real estate expert, by inquiring "[a]re you aware of any reputation amongst buyers or sellers in the real estate community that the homes in Bel View Palisades are not worth as much as they used to be by virtue of any problems with settlement?" She replied that she was not. In

a sidebar shortly thereafter, Rohrers' counsel complained that opposing counsel had asked every witness about the hundreds of homes in Bel View Palisades:

> The only inference that can be drawn from that is that their house is an aberration. We have evidence to the effect that there's five houses on Block 22 that exhibit evidence of settlement. And she has testified that it has no adverse reputation for settlement. And I think I should be entitled to ask her if she is aware of those other houses that exhibit evidence of settlement.

However, the court adhered to its earlier ruling and prohibited counsel from inquiring about other residences that had settled.

¶19    Similarly, at the close of Knudson's case, Rohrers' counsel sought to rebut Knudson's claims that no extraordinary foundation measures were needed on houses he constructed in the area. In particular, Bruce Rohrer was prepared to testify that he observed substantial settlement in a neighboring house that Knudson built and discussed in his testimony. Again the court excluded the testimony.

¶20    Relevant evidence is generally admissible. M. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M. R. Evid. 401. Evidence that is relevant may be excluded, however, if its probative value is substantially outweighed by the danger of unfair prejudice. M. R. Evid. 403.

¶21    A fact of consequence to the determination of this action is the cause of settlement of the Rohrers' house. In particular, the jury had to apportion negligence among the parties. The Rohrers contended that Knudson should have known of widespread fill in the area and

7

disclosed that information. Knudson contended that the Rohrers were negligent in constructing their home. The jury heard evidence that there are hundreds of homes in the Bel View Palisades area, that the area has no reputation for settlement, that Knudson built homes on Block 22 that did not require extraordinary foundations because they were not built on fill, and that the Rohrers were negligent because they failed to install drains, they irrigated next to their foundation, and their site grading was poor. The jury was prevented from hearing evidence that a neighboring home built by Knudson, which he claimed did not require an extraordinary foundation, was settling in the same way as the Rohrers' home, and that the area could have a reputation for settlement if the extent of other homes with failing foundations were known. All of this evidence would be of consequence to determine the relative negligence of the parties.

¶22 Whether the probative value of this evidence is substantially outweighed by the danger of unfair prejudice is left to the discretion of the trial judge. However, we hold that the District Court abused its discretion by excluding evidence of damage to other homes after Knudson's counsel presented evidence calculated to imply that such damage did not exist. Knudson's counsel opened the door to such rebuttal by eliciting testimony of the reputation for settlement in the area and suggesting that no extraordinary foundations were required for other houses in the area. Knudson cannot now complain of unfair prejudice when his own counsel sought to benefit from a similar prejudice by excluding proper rebuttal testimony.

¶23 This Court has held that a lower court abused its discretion when it excluded evidence, offered in a negligence case involving a fallen light fixture, that other light fixtures

8

were loose and subsequently repaired. *Rieger v. Coldwell*, 254 Mont. 507, 512, 839 P.2d 1257, 1259-60 (1992). We found that such evidence was probative and tended to refute expert testimony that defective sheetrock at the accident scene was the sole cause of the accident. *Rieger*, 254 Mont. at 512, 839 P.2d at 1259-60. Similarly, here evidence of differential settlement of other houses in the area was probative and tended to refute expert testimony as to the area's reputation for settlement and the implication that the Rohrers' settlement problems were unique.

¶24 We conclude that the District Court's exclusion of such rebuttal testimony affected the result since any change in the apportionment of negligence would alter the Rohrers' recovery. We therefore reverse and remand for retrial. Upon retrial, the Rohrers should be allowed to present evidence of settlement of other houses in the area to rebut any contention that there is no reputation for settlement in the area or that neighboring houses do not require extraordinary foundations because they are not built on fill.

¶25 *Whether the District Court's instruction defining "unfair practice" under the Montana Consumer Protection Act was a correct statement of the law.*

¶26 This issue requires clarification of the law under the Montana Consumer Protection Act (MCPA), §§ 30-14-101 through -143, MCA. Like many other jurisdictions, but unlike the federal act, the MCPA provides a private cause of action. *Plath v. Schonrock,* 2003 MT 21, ¶ 21, 314 Mont. 101, 64 P.3d 984; § 30-14-133, MCA.

¶27 The MCPA declares that, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Section 30-14-103,

9

MCA. While the MCPA does not further define these unlawful practices, it expresses a legislative intent to give "due consideration and weight" to interpretations of the Federal Trade Commission (FTC) and federal courts regarding § 5(a)(1) of the Federal Trade Commission Act (FTC Act) (15 U.S.C. 45(a)(1)), as amended. Section 30-14-104(1), MCA. Examples of unlawful acts or practices in the conduct of trade or commerce are listed in a Montana regulation, which also references interpretations of the FTC and federal courts regarding § 5(a)(1) of the FTC Act (15 U.S.C. 45(a)(1)), as amended. Admin. R. M. 23.19.101.

¶28 At trial, the Rohrers' counsel offered a jury instruction defining an "unfair" act or practice as "one which offends established public policy and which is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Knudson's counsel proposed instructing the jury that an "unfair" act or practice is "one which offends established public policy and which is either immoral, unethical, oppressive, or unscrupulous." Referring to the amount of damages sought, Knudson's counsel argued that including the language "or substantially injurious to consumers" would "essentially direct a verdict" for the Rohrers. The court agreed and struck "substantially injurious" from the jury instruction defining an "unfair" act or practice.

¶29 While this is a matter of first impression in Montana, there is abundant precedent in other jurisdictions. Most states with consumer protection acts patterned after § 5(a)(1) of the FTC Act interpret unfairness as described in the landmark United States Supreme Court case, *FTC v. Sperry & Hutchinson Co. (S&H)*, 405 U.S. 233, 92 S. Ct. 898 (1972). The Court

10

noted with approval the FTC's use of the following criteria for determining whether a practice is unfair:

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).

*S&H*, 405 U.S. at 244, n. 5, 92 S. Ct. at 905, n. 5.[1]

¶30   At least a dozen states apply the S&H standard to define unfairness under their consumer protection acts.[2] *See State v. Grogan*, 628 P.2d 570, 571-72 (Alaska 1981); *Cheshire Mortg. Serv., Inc. v. Montes*, 612 A.2d 1130, 1143 (Conn. 1992); *PNR, Inc. v. Beacon Prop. Mgt., Inc.*, 842 So.2d 773, 777 (Fla. 2003); *Balthazar v. Verizon Hawaii, Inc.*, 123 P.3d 194, 202 (Haw. 2005); *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960-61 (Ill. 2002); *Tyler v. Rapid Cash, L.L.C.*, 930 So. 2d 1135, 1140 (La. App. 2006); *Morrison v. Toys "R" Us, Inc.*, 806 N.E.2d 388, 392 (Mass. 2004); *State v. Moran*, 861 A.2d 763, 766 (N.H. 2004); *Gray v. North Carolina Ins. Underwriting Assn.*, 529 S.E.2d 676, 681

---

[1] The FTC announced a new unfairness definition in 1980, which was codified by Congress in 1994. Commission Statement of Policy on the Scope of Consumer Unfairness Jurisdiction, attached to Commission letter to Senators Danforth and Ford (Dec. 17, 1980), reprinted in H.R. Rpt. 98-156, at 33-40 (May 16, 1983); codified at 15 U.S.C. § 45(n). In many regards this unfairness definition reiterates elements of the S&H standard, although the primary focus is placed on consumer injury, which must be substantial.

[2] While some states apply the S&H standard as a factors test, the more common approach is to define an unfair act or practice as one which offends established public policy and which

(N.C. 2000); *Ames v. Oceanside Welding & Towing Co.*, 767 A.2d 677, 681 (R.I. 2001); *Blake v. Federal Way Cycle Ctr.*, 698 P.2d 578, 583 (Wash. App. 1985). The S&H standard has been applied by several federal circuit courts as well. *See Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 243 (1st Cir. 2005); *South Atlantic Ltd. P'ship of Tenn., LP v. Riese*, 284 F.3d 518, 535 (4th Cir. 2002); *Spiegel, Inc. v. FTC*, 540 F.2d 287, 293 (7th Cir. 1976).

¶31 We join these jurisdictions in adopting a version of the S&H standard to define unfairness under the Montana Consumer Protection Act. In doing so, we give due consideration and weight to interpretations of the FTC and federal courts regarding § 5(a)(1) of the FTC Act, as required by § 30-14-104(1), MCA. We hold as a matter of law that an unfair act or practice is one which offends established public policy and which is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.[3]

¶32 We disagree with the District Court's concern that this statement of law would essentially direct a verdict for the Rohrers. While Knudson conceded that the City's subdivision review process represented a public policy to avoid the type of harm suffered by the Rohrers, the record contains conflicting evidence as to whether soil compaction and density studies were completed. Thus, although there is little dispute that the Rohrers incurred substantial injury, a jury must still determine, as a question of fact, whether soil

---

is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

[3] While the MCPA declares both unfair and deceptive acts or practices unlawful, this opinion only addresses unfair acts or practices.

compaction and density studies were completed before concluding whether Knudson offended established public policy. A jury must also determine whether any unfair act or practice caused the damages claimed by the Rohrers in order for them to recover under the MCPA. *See* § 30-14-133(1), MCA. These questions should be left to the jury on remand.

¶33 Reversed and remanded for retrial.

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JIM RICE