FILED

November 3 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0663

DA 14-0663

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 312

WLW REALTY PARTNERS, LLC,

Plaintiff and Appellee,

v.

CONTINENTAL PARTNERS VIII, LLC,

Defendant and Appellant.

APPEAL FROM:     District Court of the Fifth Judicial District,
In and For the County of Madison, Cause No. DV 29-10-54
Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

James H. Goetz, Robert K. Baldwin, Goetz, Baldwin & Geddes, P.C., Bozeman, Montana

For Appellee:

Margot B. Ogburn, Ogburn Law Firm, PLLC, Bozeman, Montana

J. Colleen Herrington, BD&H Law Firm, PLLC, Bozeman, Montana

Submitted on Briefs:  September 9, 2015
Decided:  November 3, 2015

Filed:

Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Continental Partners VIII, LLC (Continental) bought a lot with two building pads from Yellowstone Development, LLC (Yellowstone Development) in 2004. The lot was part of the Yellowstone Club subdivision near Big Sky. The purchase and sale agreement included an assurance by Yellowstone Development that the houses Continental intended to build on the lot would have ski-in and gravity ski-out access built by the Yellowstone Club. Continental began construction on the homes and sold them to separate buyers during construction. Mr. Weidner, the managing member of WLW Realty Partners LLC (WLW Realty), bought one of the houses in 2007 as a ski home for his family. At the time of the purchase, ski-in access already existed, but construction on the ski-out access had not begun. In deciding to purchase the home, Mr. Weidner relied on Continental's representation that the Yellowstone Club would build ski-out access before construction on the two homes was complete.

¶2 In November 2008, before construction on the ski-out access had begun, the Yellowstone Club filed for bankruptcy protection. The subsequent owners of the Yellowstone Club informed Mr. Weidner that the plans for the Club had changed and ski-out access to his house would not be constructed. Mr. Weidner filed a proof of claim in the Yellowstone Club bankruptcy proceeding for failure to build the ski-out access, and the bankruptcy court allowed his claim for the approximate amount of money he spent designing and building a rope tow to serve as his replacement ski-out access.

¶3 WLW Realty then filed this action against Continental, alleging breach of contract, negligent misrepresentation, and violation of the Montana Consumer Protection

2

Act (MCPA). The District Court granted Continental's motion for summary judgment on the contract claims, but allowed the negligent misrepresentation and MCPA claims to proceed to trial. Continental argued to the District Court that it should not be held liable for misrepresentation or deception because it was the Yellowstone Club, not Continental, that failed to fulfill its contractual obligation to build ski-out access for Mr. Weidner's home. The District Court disagreed, and after a bench trial entered judgment for WLW Realty. Continental appealed. We reverse.

## ISSUES

¶4 We restate the issues on appeal as follows:

¶5 Did Continental properly preserve for appeal its argument about the legal requirements of negligent misrepresentation by raising the argument in a reply brief in support of a motion in limine?

¶6 Did the District Court err by imposing liability on Continental for negligent misrepresentation?

¶7 Did the District Court err by finding that Continental had violated the Montana Consumer Protection Act?

## FACTUAL AND PROCEDURAL BACKGROUND

¶8 Continental, based in Naples, Florida, buys land and develops homes on the land for resale. Its managing member is James Murphy. In 2004, Continental became interested in buying a lot with two building pads, described as Chalet 9 and 10, on the side of a mountain close to Big Sky ski slopes and the lodge of the Yellowstone Club. The lot was owned by Yellowstone Development and was part of the Yellowstone

3

Mountain Club subdivision. Mr. Murphy bought the lot from Yellowstone Development in June 2004. Continental obtained the lot by assignment from Mr. Murphy on July 29, 2004. As part of the Purchase and Sale Agreement, Mr. Murphy and Yellowstone Development agreed that Yellowstone Development would provide Chalet 9 and 10 with ski-in and ski-out access.[1] Section 9.4 of the Purchase and Sale Agreement provided:

> 9.4 Seller will provide Buyers ski-in and ski-out access to both units of the Property via a groomed ski run which will be constructed by Seller on or before the completion of the construction of the homes on the Property. The groomed ski run will be generally depicted on a map which will be supplied to Buyers prior to Closing. Prior to Closing, Buyer shall approve or disapprove the location of the ski-in and ski-out access.

Yellowstone Development provided Mr. Murphy of Continental with a map depicting the route of the ski-in and ski-out access. An employee of Continental then helped design and prepare architectural plans for Chalet 9 and 10. The plans show a ski room designed to store ski equipment and to make it convenient to get in and out of Chalet 9 and 10 for ski-in and ski-out access. After reviewing the map and the architectural plans, Continental began construction on Chalet 9 and 10.

¶9 Continental sold Chalet 9 and 10 to separate buyers during construction. The Chalet at issue in this case, Chalet 9, was sold to WLW Realty in August of 2007 for $12 million. William Weidner is the managing member of WLW Realty; he established the LLC for the purpose of purchasing Chalet 9 as a ski home for his family. Mr. Weidner

---

[1] The Purchase and Sale Agreement says Yellowstone Development will build the ski-out access, but the testimony at trial referred generally to the Yellowstone Club's responsibility to build the ski-out access. Yellowstone Development, LLC was an affiliate of the Yellowstone Mountain Club, LLC and was one of the entities consolidated into the "Yellowstone Club Cases" administered by the Bankruptcy Court.

was looking for property that was close to the lodge, had ski-in and ski-out access, and was large enough to accommodate his family. When Mr. Weidner looked at Chalet 9, he was shown the ski-in access, which was already completed, and the proposed site of the ski-out access. Mr. Weidner also reviewed the map illustrating the ski-in and ski-out access, and the 2004 Purchase and Sale Agreement demonstrating Continental's contractual right to have the ski-out access constructed by Yellowstone Development before construction on Chalet 9 and 10 was complete. Mr. Weidner discussed ski-out access with Mr. Murphy, and Mr. Murphy confirmed that ski-out access could be ready for the ski season after 2008. Mr. Murphy was aware that ski-in and ski-out access was a factor in Mr. Weidner's decision to purchase Chalet 9. WLW Realty and Continental signed a Real Estate Purchase and Sale Agreement on August 31, 2007.

¶10 Chalet 9 was substantially complete in July of 2008, but at that time, construction of the ski-out access had not even begun. The Yellowstone Club assured WLW Realty and Continental that plans for the ski-out access were proceeding and certain construction components were simply "awaiting budget approval." However, the Yellowstone Club sought bankruptcy protection on November 10, 2008, a development that neither Continental nor WLW Realty anticipated.

¶11 The new owners of the Yellowstone Club subsequently informed Mr. Weidner that the master plan had changed and the ski-out access to Chalet 9 would not be constructed. As a result, WLW Realty filed a Proof of Claim in the Yellowstone Club bankruptcy proceeding, asserting a claim of $2,500,000 for "failure to build ski-in & ski-out access to Chalet 9 & 10 per Purchase & Sale Agreement." The Trustee objected to this Proof of

5

Claim, and in his response to the objection, Mr. Weidner stated in an affidavit that, "I understood that [the Yellowstone Mountain Club] agreed to build the ski-in and ski-out access for the Chalets 9 and 10 when it sold those two properties to Continental and Continental then transferred that right to me upon the purchase of Chalet Unit 9."

¶12 In the meantime, Mr. Weidner negotiated for a ski rope tow to be constructed next to Chalet 9 to facilitate ski-out access. Architectural, construction, and attorney fees for the ski rope tow approached $225,000. The ski rope tow is not as convenient as the gravity ski-out access Mr. Weidner originally sought, and according to Mr. Weidner, the lack of gravity ski-out access reduced the value of Chalet 9 by $2-3 million. In June 2010, the Bankruptcy Court approved WLW Realty's and the Yellowstone Club's stipulated settlement allowing WLW Realty's claim for the lack of ski-out access in the amount of $225,000.

¶13 Two weeks after the Bankruptcy Court approved WLW Realty's claim against the Yellowstone Club, WLW Realty initiated this litigation against Continental. In its Complaint, WLW Realty alleged that it was Continental and not the Yellowstone Club that had agreed to build the ski-out access, and thus Continental falsely represented to WLW Realty that the ski-out access would be constructed. It also alleged breach of contract claims and violations of the Montana Consumer Protection Act.

¶14 The District Court granted Continental's motion for summary judgment on the contract claims, but allowed the negligent misrepresentation and Montana Consumer Protection Act claims to proceed to trial. In denying Continental's motion as to the latter two claims, the District Court observed, "counsel for both sides acknowledged that the

6

crux of this case is to ascertain whether Defendant represented that ski out access would be provided by the Yellowstone Club or whether Defendant represented that it independently would provide the ski out access." The District Court denied the motion based on what it thought was a genuine dispute of material fact.

¶15 Before trial, Continental moved to limit the scope of trial to WLW Realty's claims as pled in the Complaint, namely that Continental was responsible for building Chalet 9's ski-out access. WLW Realty conceded for the first time in its response brief that Continental was not responsible for constructing the ski-out access—a factual concession that differs substantially from the facts as pled in its Complaint—but insisted that Continental had misrepresented that Chalet 9 would have ski-out access. In its reply to this new argument, Continental cited several decisions from this Court holding that for a representation to be actionable, it must relate to a past or existing material fact and it must have been untrue when made. Since Continental's representations about Chalet 9's ski-out access were representations about a future fact and were not untrue when made, Continental argued it could not be held liable for negligent misrepresentation. It also maintained that because WLW Realty conceded that the obligation to build the ski-out access was imposed upon the Yellowstone Club and not Continental, there was no basis for holding Continental liable for not providing the access. The District Court denied Continental's motion in limine without addressing the merits of the argument Continental raised in its reply brief.

¶16 The case was tried to the District Court in December 2013. At the conclusion of trial, the District Court issued findings of fact and conclusions of law, found that

Continental had made material misrepresentations to WLW Realty, and entered judgment against Continental in the amount of $2 million for negligent misrepresentation and $232,386.32 for violations of the Montana Consumer Protection Act.

¶17 Continental filed a timely appeal from the final judgment entered against it. Continental raised three issues on appeal, but we address only the dispositive issue of liability, as well as the procedural issue of waiver.[2] Additional facts will be discussed as necessary in the following analysis.

## STANDARD OF REVIEW

¶18 We review findings of a trial court sitting without a jury to determine if the district court's findings are clearly erroneous. *Mularoni v. Bing*, 2001 MT 215, ¶ 22, 306 Mont. 405, 34 P.3d 497. We review a district court's conclusions of law de novo to determine whether they are correct. *Mularoni*, ¶ 22.

## DISCUSSION

¶19 *Did Continental properly preserve for appeal its argument about the legal requirements of negligent misrepresentation by raising the argument in a reply brief in support of a motion in limine?*

¶20 Continental argues that WLW Realty has failed to satisfy the elements of negligent misrepresentation. WLW Realty maintains that Continental has waived its argument about the elements of negligent misrepresentation by waiting until a reply brief in support of a motion in limine to raise the issue for the first time. WLW Realty cites *Worledge v.*

---

[2] The parties raised many issues and sub-issues on appeal, including questions of contract interpretation and the proper measure of damages, and vehemently disagreed about who said what to the District Court and when. We reviewed and considered these arguments and found them either unpersuasive or non-dispositive. We therefore confine our Opinion to the central issues of waiver and liability.

*Riverstone Residential Group, LLC*, 2015 MT 142, ¶ 16, 379 Mont. 265, 350 P.3d 39, for the proposition that a new argument may not be raised in a reply brief. However, in *Worledge*, we went on to say that whether a court addresses the merits of an issue or evidence raised for the first time in a reply brief is "typically driven by fairness to the parties." *Worledge*, ¶ 17. In fact, Rule 12(3) of the Montana Rules of Appellate Procedure says, "[t]he reply brief must be confined to new matter raised in the brief of the appellee." Although this is a rule of appellate procedure, the principle applies equally to reply briefs filed in the district court. The purpose of a reply brief is to respond to arguments raised in a response brief; we will not fault a party for waiting until the reply brief to respond to an argument or evidence that was first raised in a response brief.

¶21 In this case, Continental's argument about the elements of negligent misrepresentation did not become relevant until after WLW Realty made an important concession in its response brief in opposition to Continental's motion in limine. If WLW Realty's argument was that Continental said *Continental* would build ski-out access for Chalet 9, Continental's best defense would be a factual one: Continental never represented that it was responsible for constructing ski-out access. If, however, WLW Realty's argument was that Continental said the *Yellowstone Club* would build ski-out access for Chalet 9, Continental's best defense would be a legal one: Continental did represent that the Yellowstone Club would build ski-out access, but that representation is not legally actionable because it was regarding a future event and it was not untrue when made. In its Complaint, WLW Realty made the former claim. Not until two years later in its response to Continental's motion to limit the scope of trial did WLW Realty make

the latter claim. Thus, not until WLW Realty made the latter claim was it relevant for Continental to argue the legal elements of negligent misrepresentation. Faulting Continental for raising this argument only in its reply brief in support of its motion in limine would be manifestly unfair. Continental has not waived this argument on appeal.

¶22 *Did the District Court err by imposing liability on Continental for negligent misrepresentation?*

¶23 Throughout the trial, WLW Realty sought to prove that Continental had misrepresented to Mr. Weidner that Chalet 9 was going to have ski-out access before construction was complete. At the conclusion of trial, the District Court requested proposed findings of fact and conclusions of law from both parties. In its proposed conclusions, WLW Realty claimed that in order to establish negligent misrepresentation, it must prove, *inter alia*, that "Continental made a representation as to a material fact; [and] [t]he representation was untrue." WLW Realty cited *Cechovic v. Hardin & Associates, Inc.*, 273 Mont. 104, 112, 902 P.2d 520, 525 (1995) in support of this conclusion of law. The District Court adopted this conclusion and citation verbatim and entered judgment against Continental.

¶24 However, the District Court omitted three important words in its recitation of the elements of negligent misrepresentation. While the District Court found that "Continental made a representation as to a material fact . . . [and] [t]he representation was untrue," the language from our holding in *Cechovic* reads: "a claim for negligent misrepresentation requires proof of the following elements: (1) the defendant made a representation as to a *past or existing* material fact; (2) the representation must have been

10

untrue . . . ." *Cechovic*, 273 Mont. at 112, 902 P.2d at 525 (emphasis added).  We have emphasized regarding the first element that "the false representation must relate to a fact already in existence."  *Kitchen Krafters v. Eastside Bank*, 242 Mont. 155, 165, 789 P.2d 567, 573 (1990) *overruled in part by Busta v. Columbus Hosp.*, 276 Mont. 342, 916 P.2d 122 (1996).  And interpreting the second element, we have held that a statement may turn out to be untrue without being "untruthful when it was made."  *Harpole v. Powell Cnty. Title Co.*, 2013 MT 257, ¶ 30, 371 Mont. 543, 309 P.3d 34.  We analyze only these two elements of negligent misrepresentation because they are dispositive.

¶25    Regarding the first element, Continental argues that the representation it made to WLW Realty was a representation as to a future event.  Continental told WLW Realty that the Yellowstone Club would build gravity ski-out access for Chalet 9.  At the time Continental made this representation to WLW Realty, the Yellowstone Club had not begun construction of the ski-out access, making the assertion a representation about a future event.  WLW Realty counters that Continental's representations about the ski-out access were not representations as to a future event because they were premised upon an existing contractual right to have the ski-out access built.  We dismissed a similar argument in *Kitchen Krafters*.

¶26    In that case, a bank told Kitchen Krafters that all of the payments it made pursuant to an escrow agreement would be applied to a trust indenture on certain property.  *Kitchen Krafters*, 242 Mont. at 158-59, 789 P.2d at 569-70.  The bank later failed to properly apply a $5,000 payment to the trust indenture, and Kitchen Krafters sued the bank for negligent misrepresentation.  *Kitchen Krafters*, 242 Mont. at 165, 789 P.2d at

11

573. We held that, "[t]his evidence does not indicate that the Bank misrepresented any existing facts. This statement only became in possible error [sic] when the Bank later allegedly failed to properly apply the $5,000 prepayment." *Kitchen Krafters*, 242 Mont. at 165, 789 P.2d at 573.

¶27 WLW Realty's argument is similarly unpersuasive. Continental told WLW Realty that the Yellowstone Club would build ski-out access for Chalet 9, pursuant to Continental's Buy Sell Agreement with Yellowstone Development. The representation WLW Realty sued upon was not that Continental falsely represented that a contractual right to ski-out access existed, but that Continental falsely represented that the ski-out access would be built in the future. Not until after the representation was made could the parties determine its accuracy. Thus, Continental's representation was as to a future event, and WLW Realty has failed to satisfy the first element of negligent misrepresentation.

¶28 Regarding the second element, the District Court found that "Continental's representations were not true. There is no dispute that the gravity ski-out access was never constructed. In fact, the undisputed evidence confirms that it will not be constructed." However, the fact that Continental's representation turned out not to be true does not mean it was "untruthful when it was made." *Harpole*, ¶ 30. In fact, when Continental told WLW Realty that Chalet 9 would have ski-out access, Continental believed that to be true. It had a contractual right to have the ski-out access built by the Yellowstone Club, its architectural plans for Chalet 9 and 10 incorporated a ski room for ease of entry onto the ski-out access, and it provided WLW Realty with a map depicting

the proposed route of the ski-out access. Continental was prevented from enforcing its contractual right because the Yellowstone Club filed for bankruptcy protection. The events that have prevented the construction of ski-out access for Chalet 9, although unfortunate, were unknown and unknowable to Continental at the time of its representation to WLW Realty and were completely outside of Continental's control. Continental's representation that Chalet 9 would have ski-out access was not untrue when made. WLW Realty has failed to satisfy the second element of negligent misrepresentation.

¶29 We have held that in order for negligent misrepresentation to be actionable, all elements of the tort must be present. *Circle S Seeds of Mont., Inc. v. Mont. Merch., Inc.*, 2006 MT 311, ¶ 20, 335 Mont. 16, 157 P.3d 671 ("a 'tort claim cannot arise until all the elements of the tort . . . are present.'") (citing *Zempel v. Liberty*, 2006 MT 220, ¶ 36 n. 11, 333 Mont. 417, 143 P.3d 123; *Gabriel v. School Dist. No. 4, Libby*, 264 Mont. 177, 180-81, 870 P.2d 1351, 1352-53 (1994)). Because WLW Realty failed to satisfy the first and second elements of the tort, WLW Realty did not establish that Continental is liable for negligent misrepresentation. Therefore, the District Court erred in imposing liability on Continental for negligent misrepresentation.

¶30 *Did the District Court err by finding that Continental had violated the Montana Consumer Protection Act?*

¶31 The Montana Consumer Protection Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Section 30-14-103, MCA. We have held "as a matter of law that an unfair act or practice is one which offends

13

established public policy and which is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Rohrer v. Knudson*, 2009 MT 35, ¶ 31, 349 Mont. 197, 203 P.3d 759. The MCPA is modeled on the Federal Trade Commission Act, and "[i]t is the intent of the legislature that . . . due consideration and weight shall be given to the interpretations of the federal trade commission and the federal courts relating to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C., 45(a)(1)), as amended." Section 30-14-104, MCA. When confronted with a matter of first impression under the MCPA, we look to precedent from other jurisdictions that have consumer protection acts patterned after § 5(a)(1) of the FTC Act. *Rohrer*, ¶ 29.

¶32 Citing Administrative Regulations promulgated pursuant to the MCPA, the District Court found that unfair or deceptive practices include "[m]aking false representations as to the characteristics, use, [or] benefits of what is being sold; [and] [r]epresenting that what is being sold is of a particular standard or style when it is not." *See* Admin. R. M. 23.19.101 (2015). The District Court then concluded that Continental had represented Chalet 9 would have ski-out access; that ski-out access was never constructed; that Chalet 9 is "not the particular . . . standard[] or style it was represented to be; [that] there were false representations regarding its characteristics, use, and benefits;" and thus, that "Continental engaged in unfair or deceptive acts or practices." The District Court also noted "[t]he MCPA does not require WLW [Realty] to show that Continental knew its representations were false." Continental argues on appeal that its

representation to WLW Realty was not unfair or deceptive under the MCPA simply because it later proved false.

¶33 The District Court is correct that WLW Realty need not prove Continental intended to deceive WLW Realty in order to recover under the MCPA. National Consumer Law Center, *Unfair and Deceptive Acts and Practices* § 4.2.4.1, 193 (7th ed. 2008) ("The FTC definition of deception does not require intent"). In fact, Continental need not have even known that a representation was untrue in order to be liable for unfair or deceptive acts or practices. National Consumer Law Center § 4.2.5.1, 196 ("As a corollary to the FTC finding that an evil motive or intent to deceive is unnecessary, it follows that knowledge of a statement's falsity, 'scienter,' is not a necessary element for an FTC finding of deception."). However, like the second element of negligent misrepresentation, in order for a representation to be actionable under the MCPA, it must have been *untrue when made*. *Hensley-Maclean v. Safeway, Inc.*, 2014 U.S. Dist. LEXIS 48591, *22, 2014 WL 1364906 (N.D. Cal. Apr. 7, 2014) ("representations do not become unfair or deceptive simply because they later prove false"); *McKinney v. State*, 693 N.E.2d 65, 73 (Ind. 1998) ("A promise can be made without knowledge or reason to believe that it will be broken, but a statement that is false for purposes of the Act must be false when made"); *Sheehy v. Lipton Industries, Inc.*, 507 N.E.2d 781, 785 (Mass. App. Ct. 1987) (citing cases that "affirm the obvious principle that someone should not be liable for not disclosing what he does not know"). This is the distinction the District Court neglected to address.

¶34    Continental's representation to WLW Realty that Chalet 9 would have ski-out access built by the Yellowstone Club was not untrue when made. In fact, both parties assumed the representation was true and acted on that assumption—Continental by including a ski room in its architectural plans, and WLW Realty by purchasing the Chalet. There is no evidence Continental anticipated the bankruptcy of the Yellowstone Club, neglected to inform itself of facts that would indicate construction of the ski-out access was unlikely, or in any way deceived WLW Realty about the facts as they existed at the time of the sale. Continental did not engage in unfair or deceptive acts or practices and thus did not violate the Montana Consumer Protection Act.

**CONCLUSION**

¶35    For the foregoing reasons, we reverse the District Court's April 25, 2014 Order granting judgment in favor of WLW Realty, and remand for entry of judgment in favor of Continental.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT
/S/ JIM RICE

16